UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY SANTOS and I LOVE AMIGUITA INC., *as successor-in-interest to Palabras de Romeo Entertainment, Inc*.

                Plaintiffs,

-against-

ANGELO MEDINA, *also known as* ANGELO MEDINA MERCADO, and PUBLIMAGEN DE ASESORES INC.,

                Defendants.

**OPINION AND ORDER**

18 Civ. 02685

---

Ramos, D.J.:

    Anthony Santos and I Love Amiguita Inc. (collectively "the Plaintiffs"), filed a complaint against Angelo Medina Mercado ("Medina") and Publimagen De Asesores, Inc., ("Publimagen" and collectively "the Defendants") to recover $481,146.11 in fees arising out of Publimagen's role as Santos' booking agent. Before the Court is the Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for lack of proper venue, 12(b)(6) for failure to state a claim, and 12(b)(7) for failure to join an indispensable party.

    For the reasons set forth below, the Defendants' motion to dismiss is GRANTED in part and DENIED in part.

I.       **Factual Background**[1]

Until 2014, the Plaintiff, Santos was a musical performer and part of a bachata group called Aventura.[2] Santos and Medina first met after an Aventura concert in San Juan, Puerto Rico. Santos was interested in Publimagen's services as he transitioned his career to that of a solo artist. Doc. 29 ¶¶ 5a, 6. According to Santos, in 2010 he retained Medina and Publimagen to serve as his booking agent. Doc. 26 ¶ 3.

Santos resides in Rockland County, New York. Doc. 1 ¶ 9. I Love Amiguita Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Rockland County, New York. *Id*. ¶ 10.

Publimagen is a corporation organized under the laws of Puerto Rico and was incorporated on March 31, 1994. Doc. 24 ¶ 3. The corporation operates from its principal and only place of business in San Juan, Puerto Rico and allegedly contains no branches, employees or operations outside of Puerto Rico. *Id*. ¶ 4.

Medina is Publimagen's vice-president and sole shareholder, is a resident of Puerto Rico, and is domiciled in Puerto Rico. *Id*. ¶ 5. According to Plaintiffs, "Publimagen owns and Mr. Medina also resides in a luxury apartment in New York City at the Residences at the Mandarin Oriental on Columbus Circle." Doc. 26 ¶ 8. Medina has been managing, producing and booking artists for over thirty-seven years from Puerto Rico, including artists like Ricky Martin. *Id*. ¶¶ 3, 5.

---

[1] The following facts, recounted in the light most favorable to the Plaintiff, are drawn from the Complaint, Doc. 1; the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss; the Motion to Dismiss, *see* Doc. 24, the Defendant's Reply to Motion to Dismiss, *see* Doc. 29; and the Declaration of Anthony Santos, *see* Doc. 26.

[2] Bachata is "a genre of popular song and dance of the Dominican Republic performed with guitars and percussion." *Bachata*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/bachata (last visited March 7, 2019).

After Publimagen was retained, Medina was responsible for booking Santos' concerts at various venues, including for the "Vol. 2 World Tour" in the Spring and Summer 2015, a series of fifteen concerts in fourteen different cities around the United States and Canada, including Brooklyn, New York. Doc. 1 ¶¶ 2, 17, 28-38; Doc. 24 ¶ 16. The Defendants were "tasked with booking concert venues, reserving concert dates for Santos' live performances and for negotiating his fee for those performances." Doc. 1 ¶ 20. The Defendants' commission was 10% of the total fees Santos earned from his performances. *Id*. ¶ 3. The Defendants were also contractually obligated to remit the remainder of the fees as Santos instructed, including remitting a payment to Sony Music Entertainment U.S. Latin LLC ("Sony"). *Id*. According to the complaint, Medina traveled to New York on several occasions to meet with Santos for business purposes regarding these performances. *Id*. ¶ 18.

Prior to June 2015, the Defendants had retained the 10% commission and remitted the remainder of the fees at Santos' direction. Doc. 1 ¶ 26. Beginning in or about June 2015, the Defendants "abandoned the parties' historical course of conduct and failed to remit certain fees as Santos directed." Doc. 1 ¶ 27. Specifically, the Defendants have not made a $481,146.11 payment to Sony on Santos' behalf after the June and July 2015 concerts as instructed by Santos. Doc. 1 ¶ 5-7.

## II.     Procedural History

Plaintiffs filed the complaint on March 26, 2018 alleging breach of contract, unjust enrichment and conversion, and to recover $481,146.11. Doc. 29 ¶ 1. On October 26, 2018, the Defendants filed a motion to dismiss, arguing that the Court lacks personal jurisdiction over Defendants; that venue is not proper in the Southern District of New York; that the complaint

fails to state a claim; and that Plaintiffs have failed to join Sony as an indispensable party. *Id*. ¶ 2. On November 9, 2018, the Plaintiffs filed their opposition to the motion. *Id*. ¶ 3.

### III. Applicable Standards

#### A. 12(b)(2): Lack of Personal Jurisdiction

In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, Civil Practice Law and Rules ("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a). If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

#### B. 12(b)(3): Lack of Proper Venue

"When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 U.S. Dist. LEXIS 95426, at *10 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)). The "court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences

and resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (citing *E.P.A. ex rel. McKeown v. Port Authority*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

In evaluating venue for claims in a breach of contract action, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc. v. Quality Prods.*, 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995) (citing *JSP Int'l v. Tri-Tech Group, Inc.*, No. 95-2422, 1995 U.S. Dist. LEXIS 9684, at *5 (S.D.N.Y. July 13, 1995)) (Patterson, J.) (venue in breach of contract action proper where contract is negotiated and executed or where it was to be performed).

### C. 12(b)(6): Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v.*

*Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### D. 12(b)(7): Failure to Join an Indispensable Party

Rule 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party" and the burden of showing that a party is indispensable is on the moving party. *Greenwich Life Settlements, Inc. v. Viasource Funding Grp., LLC*, 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)); *King v. Pine Plains Cent. Sch. Dist.*, 918 F. Supp. 772, 782 (S.D.N.Y. 1996).

"First, the court must determine whether an absent party . . . qualifies as a 'necessary' party under Rule 19(a)." *Greenwich Life Settlements,* 742 F. Supp. 2d 455 (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). If the criteria in 19(a) is met, the absent

party must be joined. *Greenwich Life Settlements, Inc.*, 742 F. Supp. 2d at 455. An absent party is necessary to a litigation if "the court cannot accord complete relief among existing parties," or the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in [that party's] absence may" either "(i) as a practical matter impair or impede [the absent party's] ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.* at 456 (citing Fed. R. Civ. P. 19(a)(1); *see also Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir.1999)).

If joinder of the party is not feasible, the court must assess under the second step in Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* at 456; *see also Jota v. Texaco, Inc.*, 157 F.3d 153, 162 (2d Cir. 1998); *Bodner*, 114 F. Supp. 2d at 137; *Bodner*, 114 F. Supp. 2d at 137 ("only where the Court makes a finding that a party is necessary will it continue to the second inquiry" …); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (per curiam); *Ryan v. Volpone Stamp Co.*, Inc., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000).

**IV.     Discussion**

**A.     Personal Jurisdiction**

   i.     <u>Long-Arm Jurisdiction</u>

Plaintiffs argue that the Court may assert personal jurisdiction over Medina and Publimagen pursuant to New York's long arm statute, N.Y.C.P.L.R. § 302(a). Under § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state …." N.Y.C.P.L.R. § 302(a)(1). Additionally, under § 302(a)(1), a

7

court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)). To determine whether a non-domiciliary has "transact[ed] business" in New York, courts consider the totality of the circumstances. *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663, 2001 WL 1468168, at *6 (S.D.N.Y. Nov. 19, 2001). Common factors include, but are not limited to:

> (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice-of-law clause in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 397 (S.D.N.Y. 2007); *Yellow Page Solutions*, 2001 WL 1468168, at *6 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996)). Ultimately, a defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)).

Here, Plaintiffs have met their *prima facie* burden. First, the Defendants transacted business in New York. The Defendants scheduled three concerts in Brooklyn, NY at the Barclays Center on July 10, 11, and 12, 2015. Doc. 1 ¶ 38. Additionally, Medina traveled to New York on several occasions to meet with Santos, who resides in Rockland County, New York for business purposes, and also met with local promoter, Felix Cabrera regarding Santos'

concerts. Doc. 1 ¶ 18, Doc. 24 ¶ 19; *see also HomeoPett LLC v. Speed Lab., Inc.,* No. 14-cv-663, 2014 WL 2600136, at *8 (E.D.N.Y. June 11, 2014); *Sunward Elecs. v. McDonald*, 362 F.3d 17, 22-23 (2d Cir. 2004). While the Defendants argue that Santos entered into the contractual relationship with Publimagen in Puerto Rico, Doc. 29 ¶ 7, Medina's actions indicate that he purposefully transacted business in New York by scheduling Santos' performances, taking payments from local vendors, and conducting business meetings here. *See Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504 (S.D.N.Y. 2016) (holding that defendants "transacted business" when they traveled to New York to discuss business on three occasions, regularly communicated via email and telephone with plaintiffs, and sent invoices to the plaintiffs in New York). Section 302(a)(1) is also a "single act" statute: "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988) (citations omitted).

Additionally, for a cause of action to arise from the defendant's business transaction in the state, there must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Saudi v. Marine Atl., Ltd.*, 306 F. App'x 653, 654 (2d Cir. 2009) (citing *Henderson v. INS,* 157 F.3d 106, 123 (2d Cir. 1998)). "To determine whether a sufficient nexus exists, a court must evaluate the 'totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit.'" *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)). Plaintiffs have met their burden of showing that their breach of contract claim arose, at least in part, out of

9

the defendant's New York business transactions. As set forth in the Complaint, the breach of the agreement concerned payments on three concerts that were performed in Brooklyn, New York. Therefore, the Defendants' actions are sufficient to subject them to the jurisdiction of New York. Doc 24 ¶ 19.

    ii.    <u>Due Process</u>

Having found that § 302(a)(1) confers jurisdiction over Defendants, the Court must examine whether its assertion of personal jurisdiction comports with due process. *Best Van Lines*, 490 F.3d at 242. The requisite "minimum contacts" analysis "overlaps significantly" with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State. *Brown v. Web.com Group, Inc.*, 57 F.Supp.3d 345, 358 (S.D.N.Y. 2014) (citing *Best Van Lines*, 490 F.3d at 247). Accordingly, the same facts supporting jurisdiction under § 302(a)(1), support the minimum contacts requirement of due process.

Due process demands that defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). The due process inquiry has two parts: (1) "the court must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and (2) "the court must determine whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Schottenstein v. Schottenstein*, 04 Civ. 5851 (SAS), 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Metro. Life*, 84 F.3d at 567). Where a non-domiciliary "avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there," the Court's exercise of personal jurisdiction will not offend due process. *Kreutter*, 522 N.E.2d at 43.

Part two of the due process inquiry—the reasonableness of a Court's assertion of personal jurisdiction—depends on a consideration of "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantive social policies." *Schottenstein*, 2004 WL 2534155, at *8 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

Defendants purposefully engaged in business transactions in New York by scheduling concert performances and conducting business meetings in New York. *Burger King*, 471 U.S., at 475; *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957). Additionally, New York has an interest in adjudicating cases involving breach of contract, conversion and unjust enrichment that are to be performed, at least in part here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S., at 292. Plaintiffs also have an interest in adjudicating this matter in New York because Santos is domiciled in New York and I Love Amiguita has its principal place of business here. *Minnie Rose LLC*, 169 F. Supp. 3d 504 at 516. Plaintiffs claim also arises from the Defendants contact with the forum state. Next, Defendants would not face undue hardship of adjudicating the claim in New York since Medina has been routinely coming to the forum state to conduct business. Finally, "[b]ecause the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met."). *Sygall v. Pitsicalis*, No. 18 Civ. 2730, 2018 WL 5981994, at *8 (S.D.N.Y. Nov. 14, 2018). On balance, the Court finds that its assertion of personal jurisdiction over Defendants amply comports with due process. The

constitutional requirements of personal jurisdiction are also satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2005) (citing *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966)). Therefore, the Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

### B. Improper Venue

The Defendants also contend that the venue is not proper in this District pursuant to 28 U.S.C. § 1391 which "governs the venue of all civil actions brought in district courts of the United States" because the Defendants reside and conduct their businesses from Puerto Rico. *See* Doc. 29 ¶¶ 27-28. The Court disagrees.

As alleged in the Complaint, a substantial number of events giving rise to the Plaintiffs' claims took place in New York. The Defendants met with Plaintiffs and others to discuss business in New York and scheduled three concerts in Brooklyn for Santos in July 2015. Doc. 1 ¶ 38. Additionally, Medina traveled to New York on several occasions to discuss Santos' past and future performances. Doc. 27 ¶ at 12. Defendants also knowingly sent documents from Puerto Rico to New York, where Plaintiffs are domiciled. *Id.* at 2; *see* Defs.' Ex. XII; Siev Decl., Ex. E.

The contract directly relates to activities conducted in part in New York, including the concert performances. The subject matter here at issue, i.e., the dispersal of payments to Sony involves activities which occurred in New York. Therefore, venue is proper in this district because a substantial part of the events giving rise to the claim occurred here. *TBV Holdings Ltd. v. Schey,* No. 02-cv-1122, 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002) (citing 28 U.S.C. § 1391(a)(2)); *Leucadia Nat'l Corp. v. FPL Grp. Capital*, No. 93 Civ. 2908, 1993 WL

464691, at *5 (S.D.N.Y. Nov. 9, 1993). The Defendant's motion to dismiss for improper venue is DENIED.

## C. Failure to State a Claim

### i. Breach of Contract

The Defendants also allege that the Plaintiffs failed to state a claim pursuant to F.R.C.P. 12(b)(6). To prevail on its claim for breach of contract, Plaintiff must establish, by a preponderance of the evidence: (1) the existence of a contract; (2) its own adequate performance of the contract; (3) breach of the contract by defendant; and (4) damages suffered as a result of the breach. *Dollar Phone Corp. v. Dun & Bradstreet Corp.*, 559 F. App'x 71, 72 (2d Cir. 2014) (summary order); *Compagnia Importazioni Esportazioni Rapresentanze v. L–3 Commc'ns Corp.*, No. 06 Civ. 3157, 2007 WL 2244062, at *5 (S.D.N.Y. July 31, 2007) (internal citations omitted). Under New York law, "a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (quoting *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 46 (N.Y. 2009)). "Only when a court finds ambiguity in the parties' written agreement"—that is, when reasonable minds could differ as to its meaning—may the court "look to extrinsic evidence to discern the parties' intent." *Id.* (citing *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 436 (N.Y. 2013)). If a contract is ambiguous, "and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such a determination is to be made by the jury." *First Mercury Ins. Co. v. 613 N.Y. Inc.*, 609 F. App'x 664, 666 (2d Cir. 2015) (summary order) (quoting *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973)).

13

The parties here do not dispute the existence of the agreement. The parties' historical course of conduct demonstrates that they followed the agreement, as Defendants served as the booking agent for Santos. Doc. 1 ¶ 44. Prior to July 2015, Defendants had dutifully distributed the earnings from Santos' performances pursuant to his instructions. *Id.* ¶¶ 45-46. After the June and July 2015 concerts, including the three concerts that took place in Brooklyn, Defendants failed to remit the $481,146.11 payment to Plaintiffs. Doc. 1 ¶ 5-7. "Consistent with the parties' agreement, the Defendants collected fees earned by Santos for the June and July 2015 Concerts" and did not remit the payments as instructed. Defendants explain that "there are no claims regarding from Publimagen's payments to Santos but from the failure to remit a payment to a third-party who is located in Florida." Doc. 29 ¶ 17. However, this completely mischaracterizes the Plaintiffs' claim.

Here, the Plaintiffs successfully demonstrated that the Defendants breached the contract by "abandon[ing] the parties' historical course of conduct and fail[ing] to remit certain fees earned by Santos as Santos directed." Doc. 1 ¶ 27. Defendants' alleged conduct also injured Plaintiffs at least to the extent of the fees Defendants failed to remit. The Defendants' motion to dismiss the Plaintiffs' breach of contract claim is DENIED.

    ii.    <u>Unjust Enrichment</u>

The Defendants also allege the Plaintiffs' failed to state a claim pursuant to F.R.C.P. 12(b)(6) regarding unjust enrichment. To state a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiffs' expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir.2004), *cert. denied*, 544 U.S. 949 (2005). "The 'essence' of such a claim 'is that one party has received

money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000) (quoting *City of Syracuse v. R.A.C Holding, Inc.*, 685 N.Y.S.2d 381, 381 (App. Div. 4th Dep't 1999)).

In New York, it is "well settled" that "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *Simkin v. Blank*, 968 N.E.2d 459, 465 (N.Y. 2012) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009)); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 516 N.E.2d 190, 194 (N.Y. 1987). For that reason, courts in this district routinely dismiss claims for unjust enrichment that are predicated on disputes covered by an agreement between the parties. *See, e.g.*, *Epstein v. N.Y.C. Dist. Council of Carpenters Benefit Funds*, No. 15 Civ. 2866 (PAC), 2016 WL 1718262, at *3 (S.D.N.Y. Apr. 28, 2016); *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14 Civ. 9687 (VEC), 2016 WL 4916969, at *8 (S.D.N.Y. Feb. 11, 2016).

Here, there is a valid and enforceable contract between the parties. *Maryland Cas. Co. v. W.R. Grace & Co.,* 218 F.3d 204 (2d. Cir. 2000). When there is a valid contract, there is "no cognizable claim for unjust enrichment separate from [the] breach of contract claim. *Id*. (citing *IDT Corp.,* 12 N.Y.3d at 142. Since Medina and Santos concede that there is a valid and enforceable contract that includes the subject matter here at issue, i.e., how to disperse the payments, Santos has no cognizable claim for unjust enrichment separate from his breach of contract claim. *Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36 (2d Cir. 2010) (citing *IDT Corp*., 12 N.Y.3d 132, 142 ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.")); *Hoeffner v. Orrick, Herrington &*

15

*Sutcliffe LLP*, 878 N.Y.S.2d 717, 718 (App. Div. 1st Dep't 2009) (dismissing plaintiff's unjust enrichment claim as "duplicative of his breach of contract claim, since he allege[d] no duty owed him by defendants independent of the contract"). Therefore, Plaintiffs' claim that Defendants have been unjustly enriched for failure to comply with Santos' instructions by retaining $481,146.11 is dismissed as duplicative. Doc. 1 ¶¶ 55-57.

      iii.    <u>Conversion</u>

Next, Defendants seek to dismiss Plaintiffs' claim for conversion. Doc. 1 ¶ 16. The Court grants Defendants motion to dismiss the claim because it also is duplicative of the breach of contract claim.

Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006) (quoting *Vigilant Ins. Co. v. Hous. Auth.*, 660 N.E.2d 1121 (N.Y. 1995)); *Indus. & Gen. Tr., Ltd. v. Tod*, 170 N.Y. 233, 245, 63 N.E. 285 (N.Y. 1902). "For an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04 Civ. 8832(KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007); *See Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994, 2007 WL 1152894, at *9 (S.D.N.Y. April 16, 2007). A plaintiff must show that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *AD Rendon Commc'ns,*

16

*Inc*, 2007 WL 2962591 at *4 (citing *Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y.2004)) (internal quotation marks and citation omitted).

Similar to unjust enrichment, a conversion claim must be dismissed when it does not stem from a wrong independent of the alleged breach of contract. *See Wolf v. Nat'l Council of Young Israel,* 694 N.Y.S.2d 424, 425 (App. Div. 2d Dep't.1999) ("[A] claim to recover damages for conversion cannot be predicated on a mere breach of contract."). *See Kalimantano GmbH v. Motion in Time, Inc*., 939 F.Supp.2d 392, 416 (S.D.N.Y.2013) (granting motion to dismiss conversion claim as not qualitatively different from breach of contract claim*); Prudential Inv. Mgmt. Servs. LLC v. Forde*, No. 12 Civ. 5168 (LAP), 2013 WL 3199098, at *4 (S.D.N.Y. June 25, 2013) (granting motion to dismiss conversion claim where it arose from the same facts as those underlying the breach of contract claim); *Jain v. T & C Holding Inc*., No. 10 Civ. 1006(RMB), 2011 WL 814659, at *6 (S.D.N.Y. Mar. 3, 2011) (granting motion to dismiss conversion claim as a "mere duplication" of the contract cause of action); *Wolf*, 694 N.Y.S.2d at 425 (stating that conversion counterclaim was properly dismissed because it did not stem from a wrong independent of the alleged breach of contract). Here, the conversion claim rests on the allegation that Defendants failed to remit the payment to Plaintiffs. That claim does no more than recite a breach of contract. Defendants' motion to dismiss the conversion claim is therefore GRANTED.

**D. Failure to join an indispensable party under F.R.C.P. 19**

Next, the Defendants allege that the Plaintiffs failed to join an indispensable party under F.R.C.P 19 since "the only affected person by Defendants' alleged conduct would be Sony, a Florida resident and to whom the alleged funds would belong." Doc. 24 ¶ 63.

The Defendants' argument that Sony is the real party in interest regarding the distribution of the funds from Publimagen, Doc. 9 ¶ 24, fails for several reasons. First, Sony is not necessary to the litigation under 19(a) because the court can afford complete relief to Plaintiffs. *See MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir.2006); *Arkwright–Boston Mfrs. Mut. Ins. Cc. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985). After Publimagen distributes the funds to Santos, it is up to Santos whether to disperse the funds to Sony. Doc. 1 ¶¶ 4-6. Additionally, Sony's absence does not impede its ability to protect its interest or leave the existing parties double or inconsistent obligations. Sony has no contact with Publimagen, Plaintiffs do. If Sony wishes to seek payment of its fees it must look to Plaintiffs, not Defendants.

"A non-party to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.,* 102 F.3d 677, 682 (2d Cir. 1996); *Huntington Hosp. v. New England Ins.*, No. 04 Civ. 4195, 2005 WL 486703, at *3 (S.D.N.Y. Mar. 1, 2005). The Defendant's motion for failure to join an indispensable party is therefore DENIED.

**V.      Conclusion**

For the reasons stated above, the Defendants' motion to dismiss is GRANTED in part and DENIED in part.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction is DENIED.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) for lack of proper venue is DENIED.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) failure to state a claim on a breach of contract is DENIED.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6)

failure to state a claim on unjust enrichment is GRANTED.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) failure to state a claim on conversion is GRANTED.

- The Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(7) for failure to join an indispensable party is DENIED.

The parties are directed to appear for an initial pretrial conference on April 5, 2019 at 11:30am. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated: March 8, 2019
      New York, New York

Edgardo Ramos, U.S.D.J.