UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY SANTOS and I LOVE AMIGUITA INC. *as successor-in-interest to Palabras de Romeo Entertainment, Inc.*,

Plaintiffs,

– against –

ANGELO MEDINA, *also known as* ANGELO MEDINA MERCADO, and PUBLIMAGEN DE ASESORES, INC.,

Defendants.

**OPINION AND ORDER**

18 Civ. 02685

---

Ramos, D.J.:

Publimagen De Asesores contracts with performing artists through its vice president and sole shareholder, Angelo Medina Mercado ("Medina"), to provide services, such as producing and booking performances. Medina contracted with Anthony Santos, a musical performer, and I Love Amiguita, Inc., his production company, to act as his booking agent. Santos alleges that Medina failed to remit fees arising out of this role. As a result, Plaintiffs sued Defendants for a breach of contract to recover nearly $500,000 in fees. In response, Medina filed a counterclaim against Santos to recover almost $1.2 million for a breach of contract claim relating to a purported separate oral agreement between the parties. Before the Court is Santos' motion to dismiss the counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. Because the Court finds that the alleged oral agreement is unenforceable under the applicable statute of frauds, Plaintiffs' motion to dismiss is GRANTED.

I.     BACKGROUND

   A. The First Agreement

Until 2014, Santos was a musical performer and part of a bachata[1] group called Aventura. Medina is the vice president of Publimagen, a company that manages musical performers, and promotes and coordinates large events, such as two Miss Universe pageants and a National Basketball Association (NBA) exhibition game. Defendants' Memorandum in Support of Motion to Dismiss ("Medina's Motion to Dismiss") ¶ 3, Doc. 24. Publimagen is organized and exists under the laws of Puerto Rico, and is based in San Juan. Answer ¶ 11, Doc. 39. Santos and Medina first met in 2010 after an Aventura concert in San Juan, Puerto Rico. Answer ¶ 17. Santos was interested in Publimagen's services because he was transitioning his career to that of a solo artist. Defendants' Memorandum in Reply to Plaintiffs' Opposition to Motion to Dismiss ("Medina's Opposition Reply") ¶¶ 5a, 6, Doc. 29. Santos contracted with Medina and Publimagen to serve as his booking agent in 2010. Medina's Motion to Dismiss ¶ 17. Medina claims that the agreement was formed verbally, which Santos does not dispute. Defendants' Memorandum in Opposition to Plaintiffs' Motion to Dismiss ("Medina's Opposition") ¶ 28, Doc. 50; Decl. of Jordan Siev ("Siev Decl.") Ex. B, Doc. 47. The parties concede that the contract is valid and enforceable under New York law. Opinion and Order on Defendants' Motion to Dismiss ("Motion to Dismiss Order"), 15, Doc. 34.

After he was retained, Medina was responsible for booking Santos' concerts at various venues in the spring and summer of 2015 around the United States and Canada. Answer ¶¶ 2,

---

[1] Bachata is "a genre of popular song and dance of the Dominican Republic performed with guitars and percussion." *Bachata*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/bachata (last visited March 7, 2019).

17, 28–38; Medina's Motion to Dismiss ¶ 16. Medina negotiated with promoters, reserved concert dates for Santos' live performances, negotiated related fees, and booked performances for Santos' Vol. 2 World Tour. Answer ¶ 20. Medina then collected fees earned by Santos for his performances, deducted a 10% commission, and forwarded the remaining balance as Santos instructed, including remitting fees to Sony Music Entertainment U.S. Latin LLC ("Sony"). *Id.* ¶ 22, 26. Santos alleges that Medina failed to distribute the remaining balances of all June and July 2015 concerts to Sony, instead retaining almost $500,000 for himself. Compl. ¶ 3, 41.

After the conclusion of the 2015 concerts, Santos and his manager, Johnny Marines, informed Medina that Santos would no longer use Publimagen's booking services as of 2016. Answer ¶ 87. Marines memorialized the termination in a letter (the "Termination Letter"), on August 3, 2015, informing Medina that Santos had "decided to terminate [his] services as Booking Manager." Siev Decl. Ex. B. Although Medina acknowledged receipt of the Termination Letter, he claims that only his booking services were terminated, and that he would still be the exclusive promoter for Santos' concerts in Puerto Rico. Pre-Motion Conference ("PMC") 5:5, 12–18, Doc. 44. Santos argues that the entire professional relationship ended upon Medina's receipt of the Termination Letter. Siev Decl. Ex. B. Notwithstanding, the Termination Letter was not attached or referred to in the complaint, and the Court will not consider its validity. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d. Cir. 2010) (finding where documentary evidence should not be considered where it was not "attached to the complaint, not incorporated by reference in the complaint, and was not integral to the complaint.").

### B. The Alleged Oral Agreement

Medina alleges that when informed of the termination of the original contract, Marines and Medina orally agreed that "Publimagen would be the promotor of Santos' concerts in Puerto Rico,

under the same terms and conditions of the existing agreement, that is a commission of ten percent (10%)." Answer ¶ 87. Santos denies the existence of the alleged oral agreement. Plaintiffs' Memorandum in Support of Motion to Dismiss ("Santos' Motion to Dismiss") at 1, Doc. 48. From 2016-2019, Santos performed ten concerts in Puerto Rico and did not engage Publimagen in its promotion services. Answer ¶¶ 88–93.

### C. The Present Lawsuit

Santos filed the initial action against Medina on March 26, 2018, alleging breach of contract, unjust enrichment, and conversion. He sought to recover $481,146.11 in damages for Medina's alleged failure to remit fees from Santos' performances as instructed. Compl. ¶ 64, Doc. 1. On October 26, 2018, Medina filed a motion to dismiss, which was subsequently granted in part on March 8, 2019 for Santos' unjust enrichment and conversion claims, and denied for Santos' breach of contract claim. *See Santos v. Medina*, No. 18 Civ. 02685, 2019 WL 1099806 (S.D.N.Y. Mar. 8, 2019). Medina answered Santos' complaint on March, 29, 2019. In his response, Medina denied liability, and asserted a counterclaim against Santos for breach of contract. Answer ¶ 88. He sought to recover $1,192,346.84 for commissions on performance fees, which he alleges he was deprived of. *Id*. ¶¶ 88–94. Santos now moves to dismiss Medina's counterclaim for failure to state a claim. Santos' Motion to Dismiss at 1.

## II. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Rule 12 of the Federal Rules of Civil Procedure applies equally to claims and counterclaims. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("As to content, a…counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*."). Hence, in evaluating a motion to dismiss counterclaims in an answer, the Court relies on the same legal principles applicable to motions to dismiss claims in a complaint.

## III. DISCUSSION

### A. Choice of Law

First, the Court must determinate what law governs the validity of the alleged contract. Santos, while denying the existence of the oral agreement, argues that even if such an agreement were to exist, Medina already acquiesced to New York state law. Memorandum in Further Support of Plaintiff's Motion to Dismiss ("Santos' Further Support") n.2, Doc. 51. Accordingly, Santos argues that New York statute of frauds applies and invalidates the alleged oral contract. *Id.*, 7. Without specifying the applicable law in his counterclaim, Medina argued at the May 16, 2019 pre-motion conference that the oral agreement was entered into in Puerto Rico under Puerto Rican law, and that the alleged agreement is valid under Puerto Rico's statute of frauds. PMC, 5:10–11, 19–21; Answer ¶ 87. After performing its own analysis, the Court finds that Puerto Rican law governs the oral agreement.

When parties allege a conflict of law, as they do here, the court must first identify whether a conflict exists. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 575 (S.D.N.Y. 2018). To select the applicable law, a federal court sitting in diversity then applies the relevant conflict of law rules of the forum state. *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 418–19, n.61 (S.D.N.Y. 2007) (*citing White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006)) ("A federal

court sitting in a diversity case applies the choice of law rules of the forum state."). *See also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941). Here, Santos argues that the oral contract cannot be completed within a year under its terms and as a result, would be unenforceable under the New York statute of frauds. Medina claims that under the Puerto Rican Civil Code, which does not require a writing to enforce contracts exceeding $300, the oral agreement is enforceable. Having identified a conflict, the Court examines the applicable law.

Under New York conflict of law contract rules, absent a choice of law provision, the controlling law is the contract's "center of gravity," which "typically is the place of contracting or performance." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016) (*quoting Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). Medina does not specify where the oral agreement was allegedly formed in his original counterclaim, *see* Answer ¶ 87, although he later stated in the pre-motion conference that the contract was formed in Puerto Rico. PMC at 5:2–3. Notwithstanding Medina's omission, the alleged contract related only to concerts and their promotion in Puerto Rico, and was thus to be performed in Puerto Rico in its entirety. Answer ¶ 87. On balance, there center of gravity is in Puerto Rico. The Court therefore applies the law of Puerto Rico.

### B. Puerto Rican Commerce Code

*i.  Applicability*

First, the Court must determine which body of Puerto Rican law governs the oral agreement. Medina alleges that the Puerto Rican Civil Code governs the instant action, Medina's Opposition ¶ 43, while Santos claims that if Puerto Rican law applies, the Puerto Rican Commerce Code would govern. Santos' Motion to Dismiss at 10. The Court finds that the Commerce Code applies.

7

In Puerto Rico, a contract can be governed by the Commerce Code, the Civil Code, or both, depending on the nature of the agreement. The Commerce Code proscribes "[c]ommercial transactions, be they consummated by merchants or not." P.R. LAWS ANN. tit. 10, § 1002 (1932). The Civil Code governs contracts relating to all objects "not of the commerce of man," P.R. LAWS ANN. tit. 31 § 3421, and only supplement the Commerce Code when it is "silent on [a] matter" or otherwise inapplicable to a commercial contract. *P.R. Bedding Mfg. Corp. v. Herger*, 91 P.R. Dec. 519 (P.R. 1964). In selecting the applicable code, the Court must first determine if the act is commercial. *Pescadería Rosas, Inc. v. Lozada*, 116 P.R. Dec. 474, 476 (1985). The Commerce Code is generally distinguished from the Civil Code as a body of law relating to the "professional activity of businessmen." *Id*. n.1. According to the Supreme Court of Puerto Rico, there is no unitary definition of commerce, and the common thread of commercial acts is "their purpose, their connection to commercial traffic, their habituality, their attention to the interchangeable value of things." *Id*. 489. Included in, but not exhaustive of this definition are acts "enumerated in [the Commerce] Code and any others of a similar character." P.R. LAWS ANN. tit. 10, § 1002. Among those acts listed in the code are commercial commissions, which "shall be considered that which involves a commercial act or transaction and in which the principal or the agent is a merchant." *Id*. § 1521. An agent under the Commerce Code is one who, "acting in his own name or in that of the principal . . . takes any action in the discharge of the commission intrusted to him by the principal." *Id*. §§ 1522, 1526. Merchants are defined in the Commerce Code as "[t]hose who, having legal capacity to engage in business, regularly devote themselves thereto, in their own name" and "companies, corporations and associations organized in accordance with this Code." *Id*. § 1001.

Here, the alleged oral agreement is a commercial commission contract governed by the Commerce Code. Publimagen and Medina are merchants, as defined by the Commerce Code. Publimagen is "a corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico," and Medina, its sole shareholder, conducts business legally and regularly in its name as its vice president. Answer ¶ 11, 87. In the course of their business dealings, Medina, in his mercantile capacity, accepted a commercial commission to promote Santos' concerts on his behalf in Puerto Rico in exchange for 10% of Santos' total profits, an arrangement enumerated within the Commerce Code. P.R. LAWS ANN. tit. 10, §§ 1002, 1512.

In response, Medina argues that the Civil Code should govern his commercial dealings because Santos is not a registered merchant, a requirement for foreigners to be "duly authorized to conduct business in Puerto Rico." Medina's Opposition ¶ 43, 47 (*citing* P.R. LAWS ANN. tit. 10, § 1001). Notwithstanding that the punishment for failure to register with the Compulsory Registry for Merchants and Businesses is a penalty, and not necessarily the invalidation of the commercial character of the transaction, the Commerce Code is not limited exclusively to transactions between two or more authorized merchants. P.R. LAWS ANN. tit. 10, § 2527. As applicable in this instance, commission contracts only require that "the principal *or* the agent is a merchant." *Id*. § 1522 (emphasis added).

Because Medina and Publimagen are merchants who engaged in commercial acts on behalf of Santos as a commercial commission, their contract falls exclusively under the Commerce Code.

### ii. Statute of Frauds

Because the Commerce Code governs the alleged oral agreement, its statute of frauds provision applies. Here, the Court finds that the statute of frauds invalidates the contract.

Under the Commerce Code, oral contracts exceeding $300 cannot exclusively rely on witness testimony to prove their existence:

> Commercial contracts shall be valid . . . whatever may be the form . . . However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which exceeds three hundred dollars ($300), unless such testimony concurs with other evidence.

*Id.* § 1302. In order for the Court to entertain a breach of contract claim at the motion to dismiss stage, a party alleging a breach of a contract exceeding $300 must first corroborate the existence of the agreement with evidence beyond witness testimony. *Westernbank Puerto Rico v. Kachkar*, No. CIV.07-1606 (ADC), 2009 WL 2871160, at *10 (D.P.R. Sept. 1, 2009) (finding on a motion to dismiss that the court would not entertain a breach of contract claim for an oral contract without furnishing non-testimonial evidence); *see also Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 122 F.3d 88, 89 (1st Cir. 1997). Contracts that do not meet the requirements of the Commerce Code "shall produce no obligation or cause of action." P.R. LAWS ANN. tit. 10, § 1303.

Here, Medina alleged the existence of a contract over $300, which is not disputed by Santos. Answer ¶ 88; Santos' Further Support, at 12. Medina did not, however, corroborate the contract's existence beyond oral testimony, nor deny that such non-oral testimony is required

under the Commerce Code. Medina's Opposition ¶ 48, 54. The Court finds the alleged oral agreement unenforceable under the Commerce Code's statute of frauds.[2]

## C. New York State Law

Because Medina alleges that the oral agreement is governed by the same terms as those of the original agreement, which applies New York law, the Court alternatively examines the contract in light of New York's statute of frauds, and finds that the oral agreement would also be unenforceable.

Under New York's statute of frauds:

> [e]very agreement, promise or undertaking is void, unless it . . . be in writing, and subscribed by the party to be charged therewith . . . if such agreement, promise or undertaking: By its terms is not to be performed within one year from the making thereof.

N.Y. G.O.L. § 5-701(a)(1). Contracts that can be fully performed within one year by "any possible means," including indefinite contracts, fall outside of the statute of frauds. *D & N Boening, Inc. v. Kirsch Beverages*, Inc., 472 N.E.2d 992, 994–95 (N.Y. 1984). Contracts capable of full performance must be "capable of completion." *Id*. 994. As indefinite contracts do not have an explicit end-date, they require a formal termination mechanism to be fully performed. *Id*. 995 (noting that termination is not performance but "destruction of the contract where there is no provision authorizing either of the parties to terminate" (quoting *Blake v. Voigt*, 31 N.E. 256, 257 (N.Y. 1892))). For instance, contracts that allow either party to terminate with appropriate notice or just cause have been deemed fully performable within one year. *Id*. 994 (quoting *Blake v. Voigt*, 31 N.E. 256, 257 (N.Y. 1892) (allowing a termination provision of seven months'

---

[2] Because the alleged oral agreement is unenforceable under the statute of frauds, the Court declines to evaluate the alleged contract on its merits.

notice); *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 444 (N.Y. 1982) (upholding termination of employment when necessary for welfare of the company)).

Alternatively, contracts with no end date nor formal mechanism to terminate continue into perpetuity unless breached. *Id.* 994–95. Breach, however, "can never constitute a mode of fully performing an agreement." *Id.* 995. Thus, such indefinite contracts "are deemed to be incapable of being of performed within a year" under New York law and are thus within the statute of frauds. *Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 Civ. 2628 (RWS), 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002).

Here, Medina does not allege the existence of a corroborating writing, instead arguing that the oral contract was capable of being performed within one year and does not require a corroborating writing under the statute of frauds. Medina's Opposition ¶ 38. He claims that he was responsible for promoting at least one performance in Puerto Rico, and that the existence of Santos' five Puerto Rican concerts in 2016 demonstrate that the contract was capable of full performance within a year. *Id*. Yet, Medina alleges that he was exclusively responsible for promoting all of Santos' Puerto Rican concerts indefinitely, not merely one concert. *Id*. ¶ 21, 23. Additionally, he argues that the contract was not at-will, arguing that industry standards would "require mutual consent to terminate the relationship," without explicitly describing any formal termination mechanism. *Id*. ¶ 23. Because he does not allege an end date nor a method of termination, the contract would continue into perpetuity unless breached. Answer ¶¶ 38–39; Medina's Opposition ¶ 23. Alternatively, if the alleged oral agreement were at-will, as Santos claims, then the indefinite agreement could fall outside the statute of frauds; however, his alleged unilateral termination would foreclose a breach of contract claim. *Hamdi, S.A. v. Xerox*, 272 F. Supp. 3d 587, 596 (S.D.N.Y. 2017) (finding that a contract of indefinite duration would be

unenforceable if not at-will insofar as no end date was contemplated). Thus, under the terms claimed by either Santos or Medina, the alleged oral agreement could not give rise to a breach of contract claim under the New York statute of frauds.[3]

## IV. CONCLUSION

For the reasons stated above, the Plaintiffs' motion to dismiss is GRANTED.

The parties are directed to appear for a conference on November 21, 2019 at 4:00pm. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 46.

It is SO ORDERED.

Dated:   October 23, 2019
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.

---

[3] In response to Santos, Medina argues that if the alleged oral agreement were invalid under New York's statute of frauds, the original oral agreement would similarly be invalid, Medina's Opposition ¶ 28; however, Medina omitted this argument, which must be pleaded in a motion to dismiss or counterclaim as an affirmative defense. C.P.L.R. 3018[b]; *see also Kuhl v. Piatelli*, 31 A.D.3d 1038, 1039, (N.Y. 2006). His omission waives this defense, and the Court will not make a determination of its merits.